IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA DE VALENTINO, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-18-0393 | |
| § | | |
| HOUSTON INDEPENDENT SCHOOL § | | |
| DISTRICT, § | | |
|     Defendant. § | | |

## **MEMORANDUM AND ORDER**

Plaintiff Jessica de Valentino proceeds *pro se* in this suit against Defendant Houston Independent School District ("HISD"). She alleges illegal discrimination and retaliation, among other claims. Defendant has filed a "Motion for Partial Dismissal Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" [Doc. # 3]. Plaintiff filed a Response [Doc. # 6], Defendant filed a Reply [Doc. # 7], and Plaintiff filed a Surreply [Doc. # 8]. The Motion now is ripe for consideration. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court determines that the Motion should be **granted in part**.

**I.    BACKGROUND**

Plaintiff's pleadings [Doc. # 1] ("Complaint") state that she brings this suit for employment discrimination under Title VII based on her race (African American) and color (black). Complaint, at 1. She also brings tort claims and

claims of retaliation and hostile work environment. Plaintiff worked for HISD for over fifteen years as an educator. She alleges that, after she returned from maternity leave on April 6, 2016, she was subject to "disparate treatment" by her new manager, Diana Bidulescu. *Id.* at 2, ¶ 13. In particular, she alleges that Bidulescu engaged in a personal attack on Plaintiff's "pregnancy related time-off doctor's appointments, maternity leave, and parenting style." *Id.*.

Plaintiff alleges that in April and May 2016, Bidulescu "wrote a series of libelous[] memorandum" and emails about Plaintiff and her work, "slandered the Plaintiff [at a conference] citing the . . . false claim of changing assignments and lack of professionalism," and "would often enlist other managers and supervisors to harass and falsify records in attempt to injure Plaintiff." *Id.* ¶¶ 14-15, 19. Plaintiff supplies a memorandum from Bidulescu to Plaintiff, dated May 4, 2016, stating that Plaintiff failed to comply with HISD policy, guidelines for professional conduct, and her employment responsibilities. *See* Exhibit 4 to Complaint. She also provides a memorandum from Bidulescu dated May 9, 2016, which details Bidulescu's concerns that Plaintiff was not completing her assigned tasks and was revising the assignments without receiving necessary approval. *See* Exhibit 6 to

Complaint.  The May 9 memorandum warned Plaintiff of disciplinary action for failure to comply with its detailed performance directives.[1]

Plaintiff alleges that the statements in the May 9 memorandum are false. Complaint, at 2, ¶ 18.  She also alleges that an email sent by Bidulescu on May 9, which instructed Plaintiff to resolve open "tickets" or tasks, was "libelous" because "in fact the Plaintiff was not able to see the tickets because [another employee] had purposefully placed them in area the Plaintiff did not have access to."  *Id.* at 2-3, ¶ 19; *see* Exhibit 5 to Complaint.

Plaintiff also has provided a memorandum from Bidulescu to Plaintiff dated May 12, 2016, with the subject line "FAILURE TO COMPLY WITH PROFESSIONAL CONDUCT DIRECTIVE."  *See* Exhibit 7 to Complaint. Plaintiff alleges that this memorandum also was "libelous" and "falsified." Complaint, at 3, ¶ 20.

Plaintiff's Complaint alleges that Bidulescu and others acted to harass and make false statements about her in the subsequent months.  She states that, on May 4, 2016, she filed a "Work Place Bullying Complaint form."  *Id.* at 2, ¶ 17. This document does not appear to be in the record before the Court.  In September

---

[1] The May 9 memorandum gave Plaintiff four specific performance directives: complete tasks in the time allotted; respond to "tickets" within 24 hours and resolve them promptly; do not reassign collaborative tasks to other members of her team; and, respond to written communications within 24 hours, providing complete thoughts and avoiding one-word responses.  *See* Exhibit 6 to Complaint.

3

2016 Plaintiff "in good faith" reported Bidulescu to the "HISD Hotline" for alleged "theft of state and federal funds through fraudulent time reporting." *Id*. at 3, ¶ 29.

On September 27, 2016, Plaintiff was discharged. Plaintiff alleges that Bidulescu replaced Plaintiff with a Caucasian employee. *Id*. ¶¶ 30-31. Plaintiff states that she grieved the discharge through several levels of the grievance process, but the "level three grievance" was "never held." *Id.* ¶ 33.

At some point, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Neither party provides the Court with the date of Plaintiff's charge. Plaintiff has submitted her Right to Sue Letter dated November 16, 2017. *See* Exhibit 1 to Complaint.

## II. RULE 12 STANDARDS

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (internal citation and quotation marks omitted). "In considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.* (internal citation and quotation marks omitted). When the court's subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of

establishing it. *See Alabama-Coushatta Tribe of Tex. v. U.S.*, 757 F.3d 484, 487 (5th Cir. 2014). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). "Under Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012) (internal citation, alteration, and quotation marks omitted). The Court must take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Id.*

B. **Rule 12(b)(6)**

Traditionally, courts view with disfavor a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). The Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in

5

favor of the plaintiff and all well-pleaded facts taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Harrington*, 563 F.3d at 147. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to a claim to relief. *Iqbal*, 556 U.S. at 679. This determination of plausibility is a context-specific task that requires the court to draw on its judicial experience and common sense. *Id.*

In considering a motion to dismiss, a court ordinarily must limit itself to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). Documents "that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see Kane Enters. v. MacGregor*

*(USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. These presumably are documents whose authenticity no party questions. *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

A document filed by a *pro se* party must be "liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks and citations omitted). *See* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice").

## III. <u>ANALYSIS</u>

Plaintiff's Complaint brings a claim for race discrimination. Complaint, at 1, ¶ 1; *id*. at 4, ¶ 38. She also alleges claims against HISD for hostile work environment, *id.* at 4-5, ¶¶ 42-44; defamation by libel and slander, *id.* at 5, ¶¶ 45-48; retaliatory discharge, *id.* ¶¶ 49-50; retaliation under the Texas Whistleblower Act, *id*. at 6, ¶¶ 51-52; intentional infliction of emotional distress, *id.* ¶¶ 53-55; negligent hiring, supervision, training and retention regarding Bidulescu, *id.* ¶¶ 56-57; negligence, *id*. at 6-7, ¶¶ 58-63; and gross negligence, *id*. at 7, ¶¶ 64-65. She

seeks compensatory damages, including back pay, future wages, and past and future pain and suffering. She also seeks exemplary damages.

Defendants' Motion seeks dismissal of all of Plaintiff's claims other than race discrimination.

### A. HISD's Immunity from Tort Claims

Plaintiff brings multiple tort claims against HISD, some alleging intentional torts and some alleging negligence. HISD seeks dismissal of all of Plaintiff's tort claims under Rule 12(b)(1) based on HISD's governmental immunity.

Governmental units such as HISD are immune from suit and liability absent a waiver of immunity. The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity for governmental units in Texas. *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009); *Smith v. Houston Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 576 (S.D. Tex. 2017) (Rosenthal, J.). The "governmental units" covered by the TTCA include school districts, which are a political subdivision of the State. *Smith*, 229 F. Supp. 3d at 576 (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 n.11 (Tex. 2006)).

The TTCA is not a waiver of governmental immunity for intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort"). *See Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161,

166–67 (5th Cir. 2016). However, the TTCA does waive governmental immunity for lawsuits claiming "property damage, personal injury, or death aris[ing] from the operation or use of a motor-drive vehicle or motor-driven equipment" if the governmental employee would be personally liable to the claimant under Texas law, and for personal injury and death in certain circumstances. TEX. CIV. PRAC. & REM. CODE § 101.021. School districts are given special treatment and are liable only for tort claims involving the use or operation of motor vehicles. TEX. CIV. PRAC. & REM. CODE § 101.051 ("Except as to motor vehicles, this chapter does not apply to a school district"). *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008).

In response to HISD's assertion of governmental immunity, Plaintiff "alleges a waiver of immunity withstanding HISD's liability insurance affording coverage to this action." Response, at 3 (citing *Anderson v. Town of Andrews*, 492 S.E.2d 385 (N.C. App. 1997)). The case cited by Plaintiff is not relevant to the issues before the Court and, moreover, relies on North Carolina law. This Court must construe and apply the TTCA.

Plaintiff does not allege any tort involving a motor vehicle. Because the TTCA does not waive HISD's government immunity for any of the tort claims Plaintiff alleges, her tort claims must be dismissed. *See Travis*, 654 F. App'x at 167 (dismissing state law claims of defamation and intentional infliction of

emotional distress); *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (dismissing negligence-based claims because TTCA waives liability for school districts only for claims involving the use or operation of a motor vehicle).

HISD is immune from Plaintiff's claims for defamation by libel and slander; intentional infliction of emotional distress; negligent hiring, supervision, training and retention regarding Bidulescu; negligence; and, gross negligence. This Court lacks subject matter jurisdiction over the claims, and they are dismissed under Rule 12(b)(1).

### B. <u>Retaliation under Texas Whistleblower Act</u>

Plaintiff brings a claim under the Texas Public Whistleblower Act, codified at Texas Government Code § 554.002(a). This claim requires Plaintiff to plead and prove three elements: (1) a good faith report of a violation of law; (2) that the report was made to an appropriate law enforcement authority; and (3) a suspension or termination of employment, or other adverse personnel action, as a result of the report. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001).

Plaintiff's Complaint makes only a cursory allegation that the Whistleblower Act was violated, referencing "all facts and circumstances" alleged elsewhere in her Complaint. Complaint, at 6, ¶¶ 51-52. One paragraph of her Complaint alleges that in September 2016, "in good faith, [Plaintiff] reported Diana Bidulescu's theft of state and federal funds through fraudulent time reporting to the

HISD Hotline." *Id*. at 3, ¶ 29. The Court construes this allegation as the factual basis of her Whistleblower Act claim. HISD seeks dismissal of Plaintiff claim because, among other issues, Plaintiff has not pleaded any facts alleging that she made a report to an "appropriate law enforcement authority."

"The Whistleblower Act requires a claimant to show that he in 'good faith' reported a violation of law to an 'appropriate law enforcement authority.'" *Univ. of Houston v. Barth*, 403 S.W.3d 851, 857 (Tex. 2013) (citing TEX. GOV'T CODE § 554.002; *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 321 (Tex. 2002)).

> [F]or an entity to constitute an appropriate law-enforcement authority under the [Whistleblower] Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties *outside of the entity itself*, or it must have authority to promulgate regulations governing the conduct of such third parties.

*Univ. of Texas Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013) (emphasis added). "Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status" under the Act. *Id*. (noting that "holding otherwise would transform every governmental entity that is subject to any regulation or that conducts internal investigations or imposes internal discipline into law-enforcement authorities under the Act"). In the context of Whistleblower Act claims against school districts, the Supreme Court of Texas has held that

11

complaints to school district officials did not suffice as complaints to a "law enforcement authority" under the Act. *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (employee reports of alleged theft, falsification of time cards, and other issues to superintendent, assistant superintendent, internal auditor, and school board were insufficient); *see Connally v. Dallas Indep. Sch. Dist.*, 506 S.W.3d 767 (Ct. App.–El Paso, 2016) (school district police department was appropriate law enforcement agency to which employee could report alleged criminal law violations).

Plaintiff's Response argues that the HISD Hotline was an "appropriate law enforcement authority" under Section 554.002(b) because "HISD has its own police force and has the ability to work in tandem with the local law enforcement to take corrective actions," the HISD Hotline "requested the reporting of waste, fraud, and abuse," and because her call to the Hotline "was answered, recorded, and can be verified during Discovery." Response, at 3. This argument is foreclosed by controlling legal authorities. *See, e.g., Canutillo*, 409 S.W.3d 655.

Plaintiff does not allege that she made any report other than to call the Hotline. Because a report to an "appropriate law enforcement authority" is an essential element of a claim under the Whistleblower Act, *see Barth*, 403 S.W.3d at 857; *Gentilello*, 398 S.W.3d at 686, Defendant's motion to dismiss the claim is granted.

## C. Hostile Work Environment

Plaintiff brings a claim for a hostile work environment based on her race (African-American) and color (black). HISD moves to dismiss the claim under *Twombly* and *Iqbal*, arguing that her Complaint merely recites elements of the claim and does not allege specific facts. In her Surreply, Plaintiff alleges that she has suffered migraines, high blood pressure, lack of sleep, depression, and severe anger because Bidulescu subjected her to "daily" and "hourly" intimidation, harassment, and abuse. Surreply, at 1-2.

Plaintiff pleaded her claim under Chapter 21 of the Texas Labor Code, for which Texas courts apply federal Title VII standards. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805-06 (Tex. 2010). To establish a claim of hostile work environment under Title VII, Plaintiff must prove that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002)). A plaintiff must show that the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal citation and quotation marks omitted).

> Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.

*Id.* (internal citations and quotation marks omitted); *see Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

Plaintiff makes a conclusory statement that Bidulescu harassed her "based on her protected class of color, black, and race, African-American." Response, at 4. Neither her Response nor her Surreply provide any facts supporting an allegation that she was harassed based on her race or color. In her Complaint, she alleges that Bidulescu replaced Plaintiff with a Caucasian employee after Plaintiff was terminated, but makes no allegation that Bidulescu's alleged actions towards Plaintiff were based on Plaintiff's race. In fact, her Complaint alleges that she was "subject to a hostile work environment . . . for reporting discrimination." Complaint, at 4, ¶ 42.

This Court presumes that all well-pleaded factual allegations are true, even if doubtful, and then must decide whether the pleaded facts, accepted as true, state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678-79. Plaintiff has not alleged any specific facts that suggest that the alleged harassment against her was "based

on race." Defendant's motion to dismiss Plaintiff's claim for hostile work environment is granted.

D. **Retaliation under Texas Labor Code**

Plaintiff brings a claim for retaliation under Chapter 21 of the Texas Labor Code, alleging that she suffered an adverse employment action because she complained about discrimination. Complaint, at 5, ¶¶ 49-50. She alleges in her briefing that the alleged retaliation was motivated by her "protected activity of filing an EEOC charge." Response, at 4.

Texas jurisprudence for Chapter 21 claims generally parallels federal case law construing Title VII's anti-retaliation provisions. *Alamo Heights Indep. Sch. Dist. v. Clark*, 2018 WL 1692367, at *16-17 (Tex. April 6, 2018); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504-05 (Tex. 2012); *City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008). Under Title VII, an employer may not retaliate against an employee who brings a charge of discrimination. Retaliation claims, like discrimination claims, are decided under the *McDonnell Douglas* burden-shifting framework. To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir.

15

2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). If the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, nondiscriminatory reason for its employment actions. Once the employer does so, the burden shifts back to the plaintiff to establish that the employer's stated reason is a pretext for actual retaliatory purpose. Under federal Title VII standards, Plaintiff's ultimate burden is to show that her position would not have been eliminated "but for" her engagement in protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351-52 (2013). The Texas Supreme Court recently stated that it has yet to determine the appropriate causation standard for a Chapter 21 retaliation claim. *Clark*, 2018 WL 1692367, at *17.

HISD concedes that Plaintiff has pleaded the first two elements of her *prima facie* case, but argues that she is judicially precluded from showing the third element, *i.e.*, a causal connection. In particular, HISD argues that the Complaint negates "but for" causation because Plaintiff pleads that she was terminated because of her race and because she reported alleged wrongdoing to the HISD Hotline. A finding that these allegations are true would defeat a showing that Plaintiff would not have been terminated "but for" her EEOC charge, which is her ultimate burden under federal standards. *Nassar*, 570 U.S. at 351-52.

In her Surreply, Plaintiff argues that "if she had not been discriminated against she would not have been discharged," and that she filed "grievances on

16

April 6, 2016" and "EEOC reports" and "thereafter" was discharged. Surreply, at 2. The date of Plaintiff's EEOC charge, which could be dispositive of Plaintiff's retaliation claim, is not apparent from the current record.

Plaintiff's factual allegations pertaining to her retaliation claim are sparse. However, this case is at an early stage, and Plaintiff is proceeding *pro se*. Moreover, the causation standard in Texas for Chapter 21 retaliation claims has not been squarely established. Plaintiff's burden at the *prima facie* stage is less onerous "and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Clark*, 2018 WL 1692367, at *17. The Court thus declines to dismiss Plaintiff's retaliation claim on the current record. Plaintiff is advised that her retaliation claim will be dismissed at the summary judgment stage if she does not provide competent evidence that her EEOC charge caused her termination.

HISD's motion to dismiss the retaliation claim is denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Motion for Partial Dismissal Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. # 3] is **GRANTED in part**. The Court **DISMISSES with prejudice** the following claims: defamation (including libel and slander); intentional infliction of emotional distress; negligence; gross

17

negligence; negligent hiring, supervision, and retention; violation of the Texas Whistleblower Act; and hostile work environment. Plaintiff's claims that she was terminated from her employment based on race discrimination or retaliation remain pending. It is further

**ORDERED** that this case remains set for an initial pretrial conference on **May 14, 2018**, at **1:00 p.m.** in Courtroom 9F (9th floor) of the United States Courthouse, 515 Rusk Street, Houston, TX 77002.

**SIGNED** at Houston, Texas, this 12th day of **April, 2018**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE