United States District Court
Southern District of Texas
**ENTERED**
November 13, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA deVALENTINO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 4:18-CV-393 |
| | § | |
| HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jessica deValentino, proceeding *pro se*, claims that Defendant Houston Independent School District (HISD) violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Chapter 21 of the Texas Labor Code, Tex. Labor Code § 21.001 *et seq.*, by firing her (1) because of her race and/or color, or (2) in retaliation for her complaints about racial discrimination she suffered at the workplace. HISD now moves for summary judgment, ECF No. 27.[1] Having carefully considered the parties' briefing,[2] the evidence, and the applicable law, the

---

[1]  United States District Judge Nancy F. Atlas referred all potentially dispositive motions to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 23.

[2]  Plaintiff filed a response to the motion for summary judgment, ECF No. 28, HISD filed a reply, ECF No. 30, and Plaintiff filed a sur-reply, ECF No. 35. Plaintiff did not request or obtain leave of court before filing the sur-reply, but since HISD does not oppose her filing, ECF No. 36, the Court hereby grants the requisite leave *sua sponte*. The Court has also reviewed the supplemental

Court RECOMMENDS that the motion for summary judgment be GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff, an African-American woman, had worked for HISD for more than fifteen years when HISD fired her in late September 2016. ECF No. 1 ¶¶ 11, 30; ECF No. 10 ¶¶ 11, 30. At that time, Plaintiff was employed in the school district's Student Assessment Department. Her direct supervisor was Diana Bidulescu. The department head was Leng Fritsche.

In its motion for summary judgment, HISD asserts that it terminated Plaintiff "because of her poor work performance." ECF No. 27 at 17. In support of that contention, HISD points to a memorandum from Bidulescu to Fritsche, dated September 29, 2016, which states:

> On September 27, 2016 I held a Conference for the Record with Jessica DeValentino to discuss her employment with [HISD]. At the conference for the record, I discussed her poor performance and failure to make progress on her prescriptive plan of assistance. Despite support and assistance, Ms. DeValentino has not improved her performance. Therefore, I am recommending that [HISD] terminate her employment. I have received approval to proceed with the recommendation, as noted below.

ECF No. 27-1 at 21. The memorandum bears Fritsche's signature under the word "Approved." *Id.*

---

briefing the parties filed in response to the order dated September 26, 2019. ECF Nos. 37, 38, 39, 40, 41.

HISD also points to the prescriptive plan of assistance (PPA), two follow-up memorandums, and a conference for the record summary memorandum dated September 29, 2016. The PPA is dated August 5, 2016 and lists three "focus areas" in which Plaintiff was expected to "change [her] behavior/performance." ECF No. 38-2 at 16–17. The focus areas are described as: (1) "Quality of materials: Training materials and reports"; (2) "Timeliness and team work: Timelines, due dates and overall timeliness in collaborative work"; and (3) "Organization." *Id.* For each focus area, the PPA describes expected improvements and identifies evidence that would demonstrate such improvements. *Id.*

In an August 19, 2016 follow-up memorandum addressed to Plaintiff, Bidulescu wrote that a PPA check-in conference had been held and stated:

> As we discussed this afternoon, the following parameters on your PPA have not been met:
> - The training materials and collaborative tasks activities are fully developed and verified for accuracy, logic and quality <u>before being sent to peers for feedback</u>.
> - Timely and stress free collaborative planning with colleagues is evident in the quality products produced and in team projects outcomes.
> - You meet deadlines assigned for tasks and activities.
> - Feedback has been requested timely from team members and <u>is evident in the final documents</u>.
> - All the information is accurate and updated prior to the training materials being submitted for approval.
> - Delegation of duties, task swapping and <u>engaging peers in task completion do not occur at any stage of training material development or assigned activities.</u>

ECF No. 38-2 at 24–25 (underlining in original).

In another follow-up memorandum to Plaintiff dated September 6, 2016,

Bidulescu wrote that a second PPA check-in conference had been held and stated:

> As we discussed during the conference, at this time the PPA parameters have not been met:
> - Your training materials and presentations are engaging, easy to navigate, and interactive and multimedia items are crated on the Student Assessment department accounts and are in line with the department's standards of quality.
> - You will submit training materials in final form free of errors and containing accurate information.
> - The training materials and collaborative tasks activities are fully developed and verified for accuracy, logic and quality before being sent to peers for feedback.
> - Timely, cooperative and collaborative planning with colleagues is evident in the quality products produced and in team projects outcomes.
> - You meet deadlines assigned for tasks and activities.
> - Feedback has been requested timely from team members and is evident in the final documents.
> - All the information is accurate and updated prior to the training materials being submitted for approval,
> - Delegation of duties, task swapping and engaging peers in task completion do not occur at any stage of training material development or assigned activities.

ECF No. 38-2 at 27–28.

The September 29, 2016 conference for the record summary memorandum

was written by Bidulescu and addressed to Plaintiff. ECF No. 38-2 at 30–31. The

memorandum, which concluded that Plaintiff's "termination is in the best interests

of the district," identified the following deficiencies in her performance under the

PPA, some of which had been mentioned in the previous follow-up memorandums:

1.  Submit training materials in final form free of errors and containing accurate information.
    -   You failed to submit the IT calendar by the 8-11-16 deadline, and submitted it after several reminders on 8-19-16 with errors and watermark.
    -   Pre-approved assessments training due on 8-1-16 was submitted as final product several times, with incomplete information and without sound on the supporting videos – Memo Sept. 2, 2016

2.  Ensure that all your collaborative tasks activities are fully developed and verified for accuracy, logic and quality before being sent to peers for feedback
    -   You submitted incomplete training drafts for peer review, and requested excessive feedback – Memo Aug. 19, 2016, Memo Sept. 2, 2016
    -   The IT calendar and the annual reports, although thoroughly discussed in several team meeting, were incomplete and inaccurate when submitted.

3.  Feedback has been requested timely from team members and is evident in the final documents
    -   On Aug. 12, a complaint was made regarding your excessive feedback requests from Formative Assessment (FA) tea[m], which were taxing the team's time; the complaint also stated that you did not implement the feedback requested. As a result, the FA manager requested that another OA team member be assigned for future feedback requests. – Memo Aug 19, 2016

4.  You meet deadlines assigned for all task and activities
    -   Deadlines were missed for the asks assigned in the PPA – Memo Sept. 2, 2016

5. All the information is accurate and updated prior to the training materials being submitted for approval.
   - You submitted final Pre-approved training for approval without critical information about testing window and rubric stating that is was not available – Memo Sept. 2, 2016
   - You submitted the IT calendar with an incorrect assessment window

6. Delegation of duties, task swapping and engaging peers in task completion are not initiated or participated in by you at any stage of training material development or assigned activities.
   - You requested slide-by-slide feedback from FA team on more than one occasion, and the FA manager took notes and emailed them to you after your meeting with the whole FA team.

ECF No. 38-2 at 30–31 (grammatical errors in original).

Plaintiff maintains that HISD's stated reason for firing her—her alleged "poor performance"—is false and that she was really fired because of her race and/or color, or as retaliation for complaints she had previously made regarding unlawful racial discrimination she experienced at the workplace. ECF No. 28 at 11. It is undisputed that on April 7, 2016, Plaintiff lodged a formal grievance with HISD alleging that Bidulescu had mistreated her because Plaintiff is black. ECF No. 27 at 6; ECF No. 27-2 at 47–48. It is also undisputed that Plaintiff filed several additional complaints about Bidulescu over the following months. On May 4, 2016, for instance, Plaintiff filed a workplace bullying complaint form stating that Bidulescu had continued to abuse her position and harass Plaintiff. ECF No. 27-2 at 93. On June 11, 2016, Plaintiff filed a charge with the Equal Employment Opportunity Commission

6

(EEOC) alleging that she had been subjected to harassment due to her race and/or color and had been retaliated against for reporting discriminatory conduct. ECF No. 27-2 at 171. On August 3, 2016, Plaintiff filed a dispute resolution form alleging continued racial and retaliatory harassment by Bidulescu. ECF No. 27-2 at 98–104.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (quoting Fed. R. Civ. P. 56(a)). The movant bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). If the movant fails to meet this initial burden, the motion for summary judgment must be denied, regardless of the nonmoving party's response. *Celotex*, 477 U.S. at 325; *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). If the movant carries its initial burden, the burden shifts to the nonmoving party to show why summary judgment should not be granted. *Celotex*, 477 U.S. at 323–24; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). On a motion for summary judgment, "a court must view the evidence 'in

the light most favorable to the opposing party.'" *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

## DISCUSSION

### I.   Title VII's 90-day period for filing a civil action does not bar Plaintiff's suit.

Title VII gives claimants 90 days to file a civil action after receiving a statutory notice of right to sue from the EEOC or, in certain cases, the United States Attorney General. 42 U.S.C. § 2000e–5(f)(1);[3] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).

Before filing this suit, Plaintiff filed two charges with the EEOC. The first charge, filed on June 11, 2016, alleged that Plaintiff had been subjected to harassment due to her race and/or color and had been retaliated against for reporting

---

[3] The pertinent statutory text states:

> If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1).

discriminatory conduct. ECF No. 27-2 at 171. Plaintiff filed a second charge with the EEOC on February 27, 2017, this time including allegations regarding her September 2016 termination. ECF No. 27-2 at 175. In a November 16, 2017 letter referencing the first charge number, the United States Department of Justice notified Plaintiff that she had "the right to institute a civil action under Title VII" against HISD and advised her that the "suit must be filed in the appropriate Court within 90 days of your receipt of this Notice." ECF No. 27-2 at 173. Plaintiff filed this suit within 90 days, on February 9, 2018. The EEOC subsequently issued a dismissal and notice of rights to Plaintiff regarding the second charge on April 3, 2018. ECF No. 27-2 at 177.

HISD argues that Plaintiff's Title VII claims (though not her Texas Labor Code claims) should be dismissed because she filed the present lawsuit *before* she was issued a right-to-sue letter concerning her *second* charge and did not amend her suit to "include claims related to the termination of her employment" within 90 days *after* receiving the EEOC's right-to-sue letter concerning that charge. ECF No. 27 at 15–16. HISD's argument is without merit. Assuming for argument's sake that Plaintiff's initial filing of this suit was somehow defective, her "subsequent receipt of the right-to-sue letter [concerning her second charge] cures the [purported] defect with respect to the original filing of this action." *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1218 (5th Cir. Unit B 1982) (holding that plaintiffs' receipt of right to

sue letters before dismissal of their Title VII claims cured failure to satisfy condition precedent).[4]

## II. Summary judgment should be granted in HISD's favor on Plaintiff's claim that she was terminated because of her race or color.

Title VII prohibits employers from discriminating against employees on the basis of race or color. 42 U.S.C. § 2000e-2(a); *see also id.* § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race [or] color . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."). Chapter 21 of the Texas Labor Code contains a virtually identical prohibition. Tex. Labor Code § 21.051. The legal framework governing claims under both statutes is the same. *Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014) (unpublished decision). "'Proof of illicit motive is essential,' and the employee 'at all times' has the burden of proving 'that the defendant intentionally discriminated against' her." *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019) (quoting *Segar v. Smith*, 738 F.2d 1249, 1265, 1267 (D.C. Cir. 1984)).

---

[4] In addition, the Court observes that Plaintiff's complaint references her termination as a basis for her various claims against HISD. ECF No. 1 ¶¶ 6, 30, 38, 50. No practical purpose would have been served by requiring Plaintiff to file an amended complaint containing the same underlying factual allegations she had already set forth.

## A. The *McDonnell Douglas* framework

In moving for summary judgement on Plaintiff's race and color discrimination claims, ECF No. 27 at 16–22, HISD relies on the modified *McDonnell Douglas* framework, which consists of three steps. First, the plaintiff must establish a *prima facie* case of racial discrimination by showing that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *accord Figueroa*, 923 F.3d at 1086 (employees often rely on this test when they have only circumstantial evidence of discriminatory intent). If the plaintiff establishes a *prima facie* case, it creates a presumption of discrimination. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

Second, "[i]f the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory . . . reason for its employment action." *Id.* at 557.

Third, if the employer meets its burden of production at step two, the plaintiff bears the burden of offering evidence demonstrating a genuine issue of material fact "either (1) that the defendant's reason is not true, but is instead a pretext for

discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and [that] another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation omitted); *accord Easterling v. Tensas Par. Sch. Bd.*, 682 F. App'x 318, 322 (5th Cir. 2017) (unpublished decision). The plaintiff can satisfy the pretext alternative by pointing to evidence that a discriminatory reason more likely motivated the employer's action than did the employer's offered rationale, by providing evidence of disparate treatment, or by offering evidence that the employer's explanation of the adverse employment action is either "false" or "unworthy of credence." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514, 517 (1993); *accord Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *James v. Metro. Transit Auth. of Harris Cty.*, No. 4:11-cv-4417, 2013 WL 655713, at *5 (S.D. Tex. Feb. 21, 2013) (Rosenthal, J.).

## B. Application of the *McDonnell Douglas* framework

HISD concedes, for purposes of the present motion, that Plaintiff has established a *prima facie* case, thereby satisfying the first step of this framework. ECF No. 27 at 17 n.3. As a result, the burden of production shifts to HISD to articulate a legitimate, nondiscriminatory reason for firing her.

An employer cannot discharge its burden at step two of the modified *McDonnell Douglas* framework by simply asserting a reason—even a facially

legitimate one—for terminating an employee; rather, the employer "must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Figueroa*, 923 F.3d at 1092; *accord Burdine*, 450 U.S. at 258 ("[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific."); *id.* at 255 n.9 ("An articulation not admitted into evidence will not suffice."); *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 900–01 (5th Cir. 2012); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). The employer's specifically articulated non-discriminatory reason, and the evidence supporting it, must be sufficient to provide the employee with a "full and fair opportunity" to attack the reason as pretextual. *Figueroa*, 923 F.3d at 1092; *accord Burdine*, 450 U.S. at 258. Moreover, "[w]hen the reason involves subjective criteria, the evidence must provide fair notice as to how the employer applied the standards to the employee's own circumstances." *Figueroa*, 923 F.3d at 1092; *accord Alvarado v. Texas Rangers*, 492 F.3d 605, 616–18 (5th Cir. 2007). "Failing to articulate such a reason properly 'is the legal equivalent of . . . having produced no reason at all.'" *Figueroa*, 923 F.3d at 1087 (quoting *Patrick v. Ridge*, 394 F.3d 311, 320 (5th Cir. 2004)). Thus, while "[j]ob performance" may ultimately be "a legitimate . . . reason for termination," *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)), absent substantial

details concerning an employee's performance deficiencies and admissible supporting evidence, an employer's assertion that it fired an employee for "poor job performance" is simply too vague and subjective a reason to satisfy the employer's step two burden. *Figueroa*, 923 F.3d at 1089.

In its briefing, HISD asserts that it fired Plaintiff "because of her poor work performance." ECF No. 27 at 17. This assertion, without more, does not satisfy its step two burden, because it is too vague, conclusory, and subjective a reason, and because an assertion made in briefing is not evidence. *See Burdine*, 450 U.S. at 255 n.9 ("[T]he defendant cannot meet its burden . . . by argument of counsel.").

HISD relies on several pieces of evidence to supports its "poor performance" argument; however, only one of them is sufficient to satisfy its burden.

For example, Bidulescu's September 29, 2016 memorandum to Fritsche, ECF No. 27-1 at 21, fails to discharge HISD's step two burden. While the memorandum invokes the "poor work performance" justification, it also states that Plaintiff was fired due to her "failure to make progress on her [PPA]." *Id.* That provides some clarification, but not enough. The memorandum does not provide any details to support Bidulescu's assessment, does not identify what (if any) standards she applied in reaching her conclusion that Plaintiff had not made progress under the PPA, and does not explain how she applied any such standards (if indeed any were used at all) to Plaintiff's particular circumstances. Given the subjective nature of employee

"progress," the reason stated in the memorandum does not meet the strictures imposed at step two. *Figueroa*, 923 F.3d at 1089.

Likewise, the PPA and the two follow-up memorandums also fall short of satisfying HISD's step two burden. Even if they are read in conjunction with Bidulescu's September 29, 2016 memorandum to Fritsche, those documents do little more than offer a laundry list of vaguely defined criteria and fail to elucidate any discernable rubric by which Plaintiff's overall progress under the PPA was judged.[5] Furthermore, all three documents were created months before Plaintiff was discharged and consequently provide insufficient evidence of the basis for her termination. *See Patrick*, 394 F.3d at 319 ("[T]he ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made . . . ."); *Figueroa*, 923 F.3d at 1092.

The Court concludes, however, that the September 29, 2016 conference for the record summary memorandum, ECF No. 38-2 at 30–31, satisfies HISD's step two burden of production. That memorandum identifies specific, concrete incidents that precipitated Plaintiff's termination. The performance deficiencies identified in that memorandum are facially legitimate and nondiscriminatory and, most

---

[5] As noted above, the PPA lists examples of "evidence" that would indicate employee improvement. But it provides no guidance regarding how much evidence an employee would need to muster in order to demonstrate sufficient progress under the PPA, or how evidence would be weighed across different focus areas.

importantly, are described in sufficient detail so as to provide Plaintiff "with a full and fair opportunity for rebuttal." *Figueroa*, 923 F.3d at 1092.

The Court now turns to the third step of the modified *McDonnell Douglas* framework. To prevail at the third step and avoid summary judgment, Plaintiff could produce evidence which, when construed in the light most favorable to her, raises a genuine fact question as to whether one or more of the alleged performance deficiencies identified in the September 29, 2016 conference for the record summary memorandum is "false" or  "unworthy of credence." Documentary evidence, deposition testimony, or even a declaration or affidavit made by Plaintiff herself, would suffice. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). Despite this relatively low bar and ample time and repeated opportunities to do so, Plaintiff has not pointed to any such evidence. Instead, she relies on conclusory assertions unsupported by competent evidence. *See* ECF No. 28 at 6–9, 11–13.

For example, Plaintiff asserts that "[o]n numerous occasions, Bidulescu has reported inaccurate information," *id.* at 11, but does not point to any evidence in the

record supporting that claim, either as a general matter or as it relates to the specific incidents mentioned in the conference for the record summary memorandum. Plaintiff references several instances when others complimented her work, ECF No. 28 at 11, but those limited examples do not suffice to call into question the reason given for her termination. Plaintiff states that she "has documentation of the completion of the assignments that Bidulescu purportedly said were incomplete or inaccurate," *id.* at 12, but she fails to point the Court to those documents. *See Johnson v. Brennan*, No. 4:16-cv-2612, 2017 WL 5672692, at *4 (S.D. Tex. Nov. 27, 2017) (Atlas, J.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003))).

Finally, Plaintiff argues that two similarly situated employees were treated more favorably than she was, but she cites no competent summary-judgment evidence to support her claim. ECF No. 28 at 12–13.

The Court has carefully reviewed Plaintiff's summary-judgment response and other filings for any references to evidence indicating the existence of a genuine fact question as to whether she was terminated due to her race or color. The Court has found none. Although Plaintiff maintains that her termination was racially motivated, her mere subjective belief is not enough for these claims to survive a motion for summary judgment. *See Johnson*, 2017 WL 5672692, at *3 ("The Court

is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.").

For these reasons, the Court recommends that summary judgment be granted in HISD's favor with respect to Plaintiff's race and color discrimination claims.

## III.  HISD is not entitled to summary judgment on Plaintiff's retaliation claims.

Plaintiff also claims that HISD violated Title VII and Chapter 21 of the Texas Labor Code because it fired her in retaliation for making complaints about racial discrimination she experienced at the workplace. Both statutes make it illegal for an employer to take such action. 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); Tex. Labor Code § 21.055 ("An employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing.").

HISD seeks summary judgment on these claims, and the parties have chosen to utilize the *McDonnell Douglas* burden-shifting framework. Under that framework, which applies to Title VII and Chapter 21 retaliation claims alike, *see Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 781 (Tex. 2018), "the initial burden rests with the employee to produce evidence: (1) that he participated in an activity protected by [the statute], (2) that his employer took an adverse employment action against him, and (3) that there is a causal connection between the adverse employment action and the protected activity." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017); *accord Davis v. Fort Bend Cty.*, 765 F.3d 480, 489–90 (5th Cir. 2014). "This establishes the employee's prima facie case, and gives 'rise to an inference of retaliation.'" *Alkhawaldeh*, 851 F.3d at 427 (quoting *Shackelford*, 190 F.3d at 408).

Once the employee sets out a *prima facie* case of retaliation, "[t]he burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action." *Id.* Moreover, "where there is a close timing between an employee's protected activity and an adverse employment action, the employer must offer 'a legitimate, nondiscriminatory reason that explains *both* the adverse action *and the timing*.'" *Shackelford*, 190 F.3d at 407–08 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)); *accord McCoy*, 492 F.3d at 562.

If the employer successfully articulates a legitimate, non-retaliatory reason for the adverse employment action and its timing, "the burden shifts back to the employee to demonstrate that the employer's stated reason is actually a pretext for retaliation." *Alkhawaldeh*, 851 F.3d at 427 (brackets and internal quotation marks omitted). "In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that the adverse employment action would not have occurred 'but for' the employee's decision to engage in an activity protected by Title VII." *Id.* at 427 (brackets and internal quotation marks omitted).

## A. HISD's assertion that Plaintiff cannot establish a "causal connection"

HISD concedes the first two elements of Plaintiff's *prima facie* case, i.e., that she engaged in protected activity and that HISD took adverse employment action against her, ECF No. 27 at 22, 23 n.5, but it challenges the third element: the causal connection between the first two elements.

### 1. HISD's argument that Plaintiff's alternative pleading defeats causation contravenes the Federal Rules and is without merit.

HISD first argues that Plaintiff's Chapter 21 retaliation claim (but not her Title VII retaliation claim) is "judicially foreclosed." ECF No. 27 at 22–23. Specifically, HISD contends that Plaintiff is "judicially precluded from proving a causal connection" between her protected activity and her termination because she also "pleads that she was terminated because of her race." ECF No. 27 at 23.

20

HISD's argument is meritless. The Federal Rules of Civil Procedure permit parties to plead claims in the alternative and "regardless of consistency," Fed. R. Civ. P. 8(d)(2)–(3), and further mandate that pleadings "be construed so as to do justice," Fed. R. Civ. P. 8(e). Nothing in Plaintiff's complaint affirmatively and unequivocally relinquished her right to pursue her retaliation claims in the alternative to her racial discrimination claims. *See* ECF No. 1; *see also Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) ("[A] policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by [the Federal Rules of Civil Procedure]. Thus, courts have been reluctant to permit one pleading to be read as a judicial or evidentiary admission against an alternative or inconsistent pleading." (collecting cases)).

The principal case HISD cites in support of its "judicial foreclosure" argument, *University of Texas at Austin v. Kearney*, No. 3-14-500-cv, 2016 WL 2659993 (Tex. App.—Austin 2016, pet. denied), is inapposite. In support of a disparate treatment claim, the plaintiff in *Kearney* alleged that she was fired for having a relationship with a student athlete. *Id.* at *4. Although the plaintiff apparently sought to pursue a retaliation claim as well, the court's opinion makes clear that she did *not* plead the retaliation claim in the alternative. *Id.* (explaining that the retaliation claim would have failed "[e]*ven if* [the plaintiff] had asserted her

retaliation claim in the alternative" (emphasis added)). As explained above, Plaintiff *has* pleaded her claims in the alternative. Moreover, to the extent the state court in *Kearny* applied different rules of pleading, its holding is inapplicable in this court. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

### 2.  HISD fails to explain the timing of its decision to fire Plaintiff

HISD next argues that Plaintiff's Title VII and Chapter 21 retaliation claims "fail[] because she cannot show a causal connection between her protected activity and her termination at the *prima facie* stage." ECF No. 27 at 23 n.5. HISD cites a portion of Plaintiff's deposition testimony where she replied "[n]ot currently" when asked whether she had "any evidence or information" she could share with HISD's attorney "to support [her] belief that Ms. Bidulescu recommended the termination of [her] employment because [she] had complained of discrimination." ECF No. 27 at 24–25.

"The causation standard for the [third] *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action." *Alamo Heights*, 544 S.W.3d at 782 (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). Importantly, "[t]he burden of establishing the 'causal link' in the prima facie case is much less onerous than the burden of proving 'but-for' causation required for the determination

22

of the ultimate issue of retaliation." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *accord Alamo Heights*, 544 S.W.3d at 782 ("The but-for causation standard is significantly more difficult to prove than prima facie causation." (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). HISD appears to contend that the period between Plaintiff's filing of her initial grievance against Bidulescu (in early April 2016) and her termination (in late September 2016) is too long to satisfy the causal connection element. *See* ECF No. 27 at 25. Proper assessment of the causal connection element, however, must take into account *all* of the circumstances of the case. *Vargas v. McHugh*, 630 F. App'x 213, 217 (5th Cir. 2015) (unpublished decision) ("A plaintiff may be able to show a causal connection despite a significant time gap if there is other evidence of retaliation."); *Feist v. Louisiana*, 730 F.3d 450, 454–55 (5th Cir. 2013) (noting that other evidence "may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures"). Consideration of the date on which an employee engaged in protected activity and the date the employee was formally terminated "is part of [the] analysis," but is not necessarily "conclusive." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992) (affirming finding of causation based on other evidence, even though 14 months passed between the protected activity and the adverse action).

Looking at the facts of this case in their entirety, Plaintiff engaged in protected activity not just once but a number of times over the course of several months, beginning with her initial filing of a grievance on April 7, 2016 and extending through her filing of a dispute resolution form referencing racial discrimination on August 3, 2016. An employee's persistent participation in protected activity tends to make the employee a bigger target for retaliation and therefore helps to establish the requisite causal connection. In addition, Plaintiff's termination was—according to HISD's own explanation—a direct outgrowth of her having been placed on the PPA, which occurred on August 5, 2016, only two days after her last grievance. That the machinery which ultimately resulted in her termination was set in motion in such close temporal proximity to her protected activities further helps to demonstrate a causal connection. Considering these circumstances as a whole, the Court concludes that Plaintiff has satisfied the "causal connection" element of her *prima facie* case.[6]

---

[6] In its supplemental briefing, HISD asserts for the first time that it is entitled to summary judgment because Plaintiff has not provided evidence that "Bidulescu and/or Fritsche knew that she had filed an EEOC charge on June 11, 2016 and/or filed a dispute resolution form on August 3, 2016." ECF No. 39 at 2. The Court's order for supplemental briefing did not authorize HISD to raise new arguments. Moreover, because HISD did not present this argument in its motion for summary judgment, Plaintiff was under no obligation to marshal evidence responding to it in her summary-judgment response. *See Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 757 (S.D. Tex. 2019) ("It is well established that '[s]imply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." (quoting *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991)). Nonetheless, HISD's own evidence shows that Bidulescu not only knew of the August 3 dispute resolution form, she and Fritsche held a conference on August 17, 2016 with Plaintiff to respond to the charges and she wrote up a response to those complaints. ECF No. 27-1 at 105–06. Thus, Defendant's argument is without merit.

As Plaintiff has met her burden of establishing a *prima facie* case of retaliation, the burden of production shifts to HISD to articulate a legitimate, non-retaliatory reason for her termination that explains both the termination itself *and* its timing. *Shackelford*, 190 F.3d at 407–08. HISD has failed to meet this burden with respect to timing. In its motion, HISD "asserts that it terminated Plaintiff for a legitimate, non-retaliatory reason, namely, her poor work performance," ECF No. 27 at 23 n.5, but gives no explanation concerning the timing of her firing. This failure is especially problematic in light of the close timing between Plaintiff's filing of a dispute resolution form on August 3 and her being placed on the PPA on August 5, which by HISD's own admission precipitated her termination the following month. *Cf. Shackelford*, 190 F.3d at 407–08 (explaining that step two required an employer to explain the timing of an employee's termination and emphasizing events that occurred between the filing of a class action lawsuit in May and the employee's termination in mid-October).

HISD's failure to meet its burden at step two precludes it from obtaining summary judgment on Plaintiff's retaliation claims. Consequently, the Court does not reach the third step of the *McDonnell Douglas* framework.[7] *Alamo Heights*, 544

---

[7] The Court does not reach HISD's contention that Plaintiff cannot demonstrate "but for" causation (1) because the issue of "but for" causation is properly considered at the third step of the *McDonnell Douglas* framework, and (2) because the inference of retaliation created by her *prima facie* case, *Alkhawaldeh*, 851 F.3d at 427, coupled with HISD's failure to articulate a legitimate, non-retaliatory reason at step two, would be enough for a reasonable jury to infer "but for" causation.

S.W.3d at 782 ("[*I*]f the employer provides evidence of a legitimate reason for the adverse action, under the federal standard, the employee must prove the adverse action would not have occurred 'but for' the protected activity."); *Patrick*, 394 F.3d at 320 ("As we hold that the [employer] has not met its burden of producing a legitimate, non-discriminatory reason, we never reach the question whether [the employee] could demonstrate pretext, much less whether discrimination actually motivated her employer's decision not to promote her. [The employee's] *prima facie* case thus pretermits summary judgment dismissal of her action, leaving the ultimate question of discriminatory animus to be determined by the trier of fact."); *McCoy*, 492 F.3d at 562 ("[*O*]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." (emphasis added)).

Accordingly, the Court recommends that HISD's motion for summary judgment be denied with respect to Plaintiff's retaliation claims.

## CONCLUSION

The Court RECOMMENDS that HISD's motion for summary judgment be GRANTED with respect to Plaintiff's racial discrimination claims and DENIED with respect to her retaliation claims.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on November 13, 2019, at Houston, Texas.

**DENA HANOVICE PALERMO**
**UNITED STATES MAGISTRATE JUDGE**