**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

JESSICA DeVALENTINO,  §
      Plaintiff,  §
   §
v.  §      CIVIL ACTION NO. H-18-0393
   §
HOUSTON INDEPENDENT  §
SCHOOL DISTRICT,  §
      Defendant.  §

## <u>MEMORANDUM AND ORDER</u>

This employment case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 27] filed by Defendant Houston Independent School District ("HISD"). Plaintiff, *pro se*, Jessica DeValentino filed a Response [Doc. # 28], HISD filed a Reply [Doc. # 30], and Plaintiff filed a "Reply to Defendant's Reply" [Doc. # 35]. Additionally, HISD filed a Brief on Admissible Evidence [Doc. # 38] and Brief on Causation [Doc. # 39]. Plaintiff responded to each of these two Briefs [Docs. # 40 and # 41].

United States Magistrate Judge Dena Palermo issued a Report and Recommendation on Defendant's Motion ("R&R") [Doc. # 43] on November 13, 2019. In the R&R, the Magistrate Judge gave clear notice that any objections must be filed within fourteen days from service of the R&R. *See* R&R, p. 27. HISD filed timely Objections [Doc. # 44] on November 22, 2019. Plaintiff filed Objections [Doc.

# 46] on December 16, 2019, well after the fourteen-day deadline. In the document entitled "Objections," Plaintiff also responded to Defendant's objections to the R&R. HISD filed a Motion to Strike [Doc. # 49] Plaintiff's untimely objections, and a Reply [Doc. # 50] addressing Plaintiff's response to its objections. Plaintiff filed a "Reply to Defendant's Reply" [Doc. # 51], which relates exclusively to Defendant's objections.

The Court has carefully reviewed the full record in this case. Based on that review and the application of relevant legal authorities, both those that are binding and those that are merely persuasive, the Court adopts the Magistrate Judge's R&R as to the limitations defense and as to the discrimination claims, but declines to adopt the Magistrate Judge's R&R as to the retaliation claims. The Court **grants** HISD's Motion for Summary Judgment.

## I.    <u>BACKGROUND</u>

In September 2015, Plaintiff was working as an Assessment Administrator in the Student Assessment Department. Plaintiff's direct supervisor was Betty Garcia, and Dr. Leng Fritsche was head of the department. On September 23, 2015, Plaintiff filed a "Workplace Bullying Complaint Form" alleging that Garcia "frequently and repeatedly fabricates information" and that Garcia accused her of "not doing a good job." *See* Workplace Bullying Complaint Form, Exh. 2-A to Motion. HISD

investigated the complaint, conducting interviews with all witnesses and reviewing documents. "All of the witnesses stated in the interviews that they did not witness any situations that qualify as a workplace bullying." *See* Investigation Letter, Exh. 2-B to Motion. Although the investigation failed to substantiate Plaintiff's complaint, Fritsche reassigned Plaintiff to a different supervisor on another team in the Student Assessment Department. *See id.* Specifically, effective October 1, 2015, Fritsche moved Plaintiff to a team supervised by Julia Amponsah-Gilder, an African-American female.

Amponsah-Gilder met with Plaintiff and her co-worker, Douglas "Duane" Dixon, a Caucasian male, on January 26, 2016 and February 2, 2016. At those meetings, Amponsah-Gilder issued verbal warnings to both Plaintiff and Dixon regarding their "failure to work collaboratively and their inadequate work product." *See* Affidavit of Julia Amponsah-Gilder, Exh. 1 to Motion, ¶ 7. On February 5, 2016, Amponsah-Gilder issued "Verbal Warning" memos to both employees, documenting the prior verbal warnings. *See id.* Plaintiff began maternity leave on February 25, 2016.

When Plaintiff returned from her maternity leave on April 4, 2016, she assumed a new assignment on the Online Assessment team under the supervision of Diana

Bidulescu, a Caucasian female. Noe Cervantes and Alex Mamantoff were also members of the Online Assessment team.

On April 6, 2016, Plaintiff advised Bidulescu that she planned to attend training on April 20, 2016, and planned to take vacation on June 15-16 and June 20-22, 2016. *See* Email Chain, Exh. 2-C to Motion. Bidulescu responded that the April 20 training needed to be cancelled because it was during the STAAR testing, and that the June 20-22 vacation dates also fell within STARR testing dates, which were "all hands on deck" dates.[1] *See id.* Bidulescu asked Plaintiff to "refer to the testing calendar for leave planning." *See id.* The next day, April 7, 2016, Plaintiff filed a formal complaint against Bidulescu complaining that Bidulescu had scolded her for sending an email to someone outside the department without prior approval, had chastised her for attending a training program, and had denied a part of her requested vacation time. *See* HISD Dispute Resolution Form, Exh. 2-D to Motion. Plaintiff complained that the denial of her requested vacation time was "unacceptable" because "other

---

[1] The requested vacation dates of June 15-16, 2016, were approved. On June 20, 2016, the date Plaintiff was scheduled to return to work and the beginning of the June 20-22 period of requested vacation leave, Plaintiff did not report to work. Instead, she emailed that she was sick and would not return to work until June 23, 2016. *See* ECF Doc. # 27-2, p. 113.

employees were out last summer." *See id.* Plaintiff stated, "[t]he slightest thing I do is blown out of proportion because I am black" and that she was "tired of it."[2] *Id.*

On May 4, 2016, Bidulescu issued a memorandum regarding Plaintiff's conduct during a meeting on April 27, 2016. *See* May 4, 2016 Memorandum, Exh. 2-F to Motion. During the meeting, Bidulescu expressed concern that Plaintiff was "trying to change the tasks assigned to [her]" and was failing to comply with HISD policies. *See id.* Plaintiff responded that she thought it was "more efficient to do the tasks differently without informing" her supervisor, and that it was "ok" with her if Bidulescu wanted "to make wrong decisions." *Id.*

Plaintiff then filed another Workplace Bullying Complaint Form, this one against Bidulescu. *See* ECF Doc. 27-2, p. 93. The Complaint Form identifies "05/4/2016" as the "Date Filed." It is stamped "Received" on August 3, 2016, and references attachments, including a Memorandum from Bidulescu dated May 12, 2016. *See id.*, pp. 93, 95. In the complaint, Plaintiff states that Bidulescu was abusing her position to harass Plaintiff and to attack her professional conduct. *See id.* There is no allegation that any "bullying" was based on Plaintiff's race.

---

[2]     Plaintiff also filed two Dispute Resolution Forms dated April 27, 2016. *See* Dispute Resolution Forms, ECF Doc. # 27-2, pp. 84-89. Although Plaintiff cites Title VII, neither form alleges facts suggesting race discrimination and only the second form mentions retaliation.

On May 9, 2016, Bidulescu issued a memorandum regarding Plaintiff's failure to complete tasks in a timely manner and failure to follow instructions. *See* May 9, 2016 Memorandum, Exh. 2-G to Motion. In the May 9, 2016 Memorandum, Bidulescu gave Plaintiff specific directives for improvement. *See id.*

On May 12, 2016, Bidulescu issued a memorandum regarding Plaintiff's unprofessional conduct during a meeting with Fritsche and Amponsah-Gilder on May 4, 2016. *See* May 12, 2016 Memorandum, Exh. 2-H to Motion. Specifically, the Memorandum stated that Plaintiff was argumentative, curt and unprofessional during the meeting, as noted by Amponsah-Gilder. *See id.* Bidulescu noted that Plaintiff had failed to comply with the directives for improvement, and gave Plaintiff three additional directives regarding professional conduct. *See id.*

On June 11, 2016, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). *See* ECF Doc. # 27-2, p. 171. In the EEOC Charge, Plaintiff stated that she had been subjected to race discrimination and retaliation. *See id.* On November 16, 2017, the EEOC issued a Notice of Right to Sue in connection with this Charge. *See* Exh. 1 to Complaint [Doc. # 1].

In early August 2016, Bidulescu completed Plaintiff's written performance review. *See* End of Year Employee Evaluation, Exh. 2-I to Motion. In the final

appraisal, on a rating system of 1 (ineffective) through 4 (highly effective), Bidulescu rated Plaintiff mostly at levels 1 and 2 (developing), with a level 3 rating (effective) for "Customer Focus" and "Standard Expectations," defined as "Employee dresses in a manner that is appropriate for the job assignment, complies with district/department policies, is punctual for scheduled meetings, and arrives to work on time."[3] *See id.* On August 3, 2016, Bidulescu discussed the performance review with Plaintiff, who "refused to sign the appraisal and stated that she will not acknowledge it online either, as she sent it to HR." *See id.*

Also on August 3, 2016, Plaintiff filed a Dispute Resolution Form complaining about her appraisal. *See* Dispute Resolution Form, ECF Doc. # 27-2, p. 99. Plaintiff cited various "federal anti-discrimination laws," expressed her disagreement with Bidulescu's ratings, and requested a level 4 rating in every category. *See id.* at 98-103.

On August 5, 2016, Plaintiff was placed on a Prescriptive Plan for Assistance ("PPA") until September 2, 2016. *See* PPA, Exh. 2-J to Motion. The PPA identified three specific areas in which Plaintiff's work needed improvement: quality of materials; timeliness and team work; and organization. *See id.* On August 19, 2016,

---

[3]     Bidulescu agreed to raise these two level 3 ratings from level 2 ratings as a result of Plaintiff's Dispute Resolution Form. *See* Level 1 Grievance Resolution, ECF Doc. # 27-2, pp. 105-106.

Bidulescu conducted a PPA "check-in" meeting with Plaintiff. *See* Conference Summary, Exh. 2-K to Motion. Bidulescu identified several areas where Plaintiff was not meeting the goals of the PPA. *See id.* On September 2, 2016, Bidulescu conducted a second "check-in" meeting with Plaintiff. *See* Conference Summary, Exh. 2-L to Motion. Again, Bidulescu identified several PPA goals that Plaintiff had not met. *See id.*

On September 27, 2016, Bidulescu and Fritsche met with Plaintiff to review their concerns regarding her job performance. *See* Conference for the Record Summary, Exh. 2-M to Motion. Bidulescu identified areas in which Plaintiff failed to meet the PPA goals. *See id.* Bidulescu recommended that Plaintiff's employment with HISD be terminated. *See id.* On September 28, 2016, Plaintiff filed a grievance, dated September 27, 2016, challenging Bidulescu's decision to recommend termination. *See* ECF Doc. # 27-2, pp. 107-08. In the formal grievance, Plaintiff did not mention race discrimination or retaliation. *See id.*

On September 29, 2016, Bidulescu sent Fritsche a memorandum noting that Bidulescu had discussed Plaintiff's "poor performance and failure to make progress on her prescriptive plan of assistance." *See* September 29, 2016 Memorandum, Exh. 1-F to Motion. In the Memorandum, Bidulescu stated that Plaintiff's performance had not improved and, "[t]herefore," she recommended that Plaintiff's

employment be terminated. *See id.* Fritsche signed the Memorandum, approving Bidulescu's recommendation. *See id.*

HISD sent Plaintiff a letter dated October 7, 2016, advising her that her employment was terminated effective September 27, 2016. *See* October 7, 2016 Letter, Exh. 2-N to Motion. In the letter, Plaintiff was advised that the termination of her employment was based on unsatisfactory job performance, with specific examples provided. *See id.*

On January 25, 2017, following a hearing on Plaintiff's consolidated grievances, independent Administrative Hearing Officer Thelma Elizalde issued a Level Two Grievance Decision ("Grievance Decision"), Exh. 2-Q to Motion. Hearing Officer Elizalde concluded that "it was poor attitude and performance, a failure to follow directives, and lack of respect toward her supervisor that prevented [Plaintiff] from performing at her most competent level," and that Plaintiff's "termination is based solely on unsatisfactory job performance." *See id.* at 8-9. The Hearing Officer noted that Plaintiff "received a significant amount of coaching and feedback during her employment and did not improve." *Id*. at 9.

On February 27, 2017, Plaintiff filed a second Charge of Discrimination with the EEOC. *See* Charge of Discrimination, Exh. 2-T to Motion. Plaintiff stated that her termination on September 27, 2016, was the result of race discrimination and

retaliation.  *See id.*  On March 28, 2018, after Plaintiff filed this lawsuit, the EEOC issued a Dismissal and Notice of Rights in connection with this second Charge of Discrimination.  *See* Exh. 2-U to Motion.

On February 9, 2018, Plaintiff filed this lawsuit against HISD.[4]  In a Memorandum and Order [Doc. # 9] entered April 12, 2018, the Court dismissed all claims except the race discrimination and retaliation claims based on the termination of Plaintiff's employment with HISD.  By Order [Doc. # 23] entered March 4, 2019, the Court referred dispositive motions to Magistrate Judge Palermo pursuant to 28 U.S.C. § 636(b)(1)(B).  Defendant HISD filed its Motion for Summary Judgment, and Magistrate Judge Palermo issued her R&R [Doc. # 43].

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d

---

[4]    Although Plaintiff states in paragraph 1 of her Original Petition that the lawsuit is brought "under Title VII," each of her causes of action is based on Texas state law. Similarly, in her Response to Defendant's Motion for Partial Dismissal [Doc. # 6], Plaintiff describes her claims as arising under Texas law.  In the Joint Discovery/Case Management Plan, however, the parties state that Plaintiff "is bringing her discrimination and retaliation claims under Title VII."  *See* Joint Discovery/Case Management Plan [Doc. # 11], ¶ 3.  Therefore, the Court finds that it has subject matter over this dispute pursuant to 28 U.S.C. § 1331.

587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004);

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the

existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required, however, to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.

A party may object when "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). The summary judgment evidence is not required to be in a format that would be admissible at trial, but the party offering the summary judgment evidence must be able to prove the underlying facts at trial with admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000). "In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing

evidence that is admissible, though it may not be in admissible form." *Tullous v. Tex. Aquaculture Processing Co.*, 579 F. Supp. 2d 811, 817 (S.D. Tex. 2008) (citing *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987)).

## III.   LIMITATIONS DEFENSE TO TITLE VII CLAIMS

Defendant objects to the Magistrate Judge's recommendation that Plaintiff's Title VII claims are not time-barred.  The objection is overruled.

Title VII provides that a claimant may file a lawsuit under Title VII, but must do so within 90 days after receipt of the Notice of Right to Sue.  42 U.S.C. § 2000e-5(f)(1).  Plaintiff received her first Notice of Right to Sue, relating to the EEOC Charge filed prior to the termination of her employment, on November 16, 2017. Plaintiff filed this lawsuit on February 9, 2018, within 90 days after receipt of the Notice of Right to Sue.  On March 28, 2018, the EEOC sent Plaintiff the Dismissal and Notice of Rights relating to her second EEOC Charge.  *See* Dismissal and Notice of Rights, Exh. 2-U to Motion.

In her Original Petition, Plaintiff alleges that she "was discharged September 27, 2016."  *See* Original Petition [Doc. # 1], ¶ 30.  Plaintiff incorporates this allegation in her race discrimination and retaliation claims.  *See id.*, ¶ 37; ¶ 49. Therefore, HISD had adequate notice that Plaintiff was asserting discrimination and retaliation claims based on her termination.  Such prompt notice to the employer is the

main purpose of the 90-day filing requirement. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982).

Additionally, the Fifth Circuit has clearly held that "the receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending, satisfies the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII." *Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1219 (5th Cir. 1982). Plaintiff received the Dismissal and Notice of Rights while this case was pending, indeed, before HISD filed its Answer [Doc. # 10]. Therefore, the Title VII claims are not barred by Plaintiff's failure to refile them within 90-days after receipt of the second EEOC notice.[5]

## IV.   **DISCRIMINATION CLAIMS**

The Magistrate Judge recommended that Defendant's Motion be granted as to Plaintiff's race discrimination claims, both under Title VII and under the Texas Labor Code. *See* R&R at 10-18. There were no timely objections filed to this recommendation. Since there are no objections, the Court has not made a *de novo*

---

[5]     HISD notes that Plaintiff previously stated that the second EEOC notice "was not needed, nor ever acted on and it later expired." *See* Objections [Doc. # 44], p. 7 (quoting Plaintiff's Surreply [Doc. # 35], p. 2). Plaintiff is *pro se* and the Court does not construe this statement as Plaintiff's concession that the Title VII claims are time-barred.

review of this section of the R&R. *See* 28 U.S.C. § 636(b)(1). Based on a limited review of the record, however, the Court agrees with and adopts the Magistrate Judge's recommendation. The Court, therefore, grants summary judgment in favor of HISD on Plaintiff's race discrimination claims.

## V.     RETALIATION CLAIMS

Plaintiff alleges that HISD terminated her employment in retaliation for her protected activity under Title VII and under Chapter 21 of the Texas Labor Code.[6] The Magistrate Judge recommended that Defendant's Motion for Summary Judgment on these claims be denied because Plaintiff presented a *prima facie* case of retaliation and Defendant failed to articulate a legitimate, non-retaliatory reason for its decision to terminate Plaintiff's employment.

Defendant filed timely objections to the recommendation, both as to whether Plaintiff established a *prima facie* case and as to whether Defendant sufficiently articulated a non-retaliatory basis for both its decision and the timing of that decision.

---

[6]     Both statutes prohibit retaliation against an employee for complaining about race discrimination in the workplace. *See* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . .."); TEX. LABOR CODE § 21.055 ("An employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; [or] (3) files a complaint . . ..").

The Court declines to adopt the Magistrate Judge's recommendation on the retaliation claims and, instead, rules as follows.

## A.    <u>Applicable Legal Principles</u>

The substantive law governing Title VII and Chapter 21 retaliation claims is "identical." *See Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). In the Fifth Circuit, courts apply the *McDonnell Douglas*[7] burden-shifting framework to retaliation claims. *See Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016); *Miles v. Texas Dep't of Motor Vehicles*, 773 F. App'x 199, 200 (5th Cir. July 10, 2019). The plaintiff must first establish a *prima facie* case of retaliation. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). If the plaintiff satisfies this burden to establish a *prima facie* case, the "burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action." *Id*. "Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to 'demonstrate that the employer's [stated] reason is actually a pretext for retaliation.'" *Id*. (quoting *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

---

[7]    *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

### B. *Prima Facie* Case

To establish a *prima facie* case of retaliation, the employee must show that (1) she engaged in protected activity; (2) she was subject to an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse employment action. *See Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019); *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017).

It is undisputed that Plaintiff engaged in protected activity relating to alleged race discrimination on April 7, 2016, when she filed a formal grievance complaining that "[t]he slightest thing I do is blown out of proportion because I am black." *See* HISD Dispute Resolution Form, Exh. 2-D to Motion. Plaintiff also engaged in protected activity involving alleged race discrimination on June 11, 2016, when she filed her EEOC Charge alleging race discrimination.[8] *See* ECF Doc. # 27-2, p. 171.

Regarding the second element of the *prima facie* case, it is undisputed that Plaintiff suffered an adverse employment action when she was discharged effective September 27, 2016.

Defendant argues that Plaintiff has not established the causal connection element of the *prima facie* case. As to the Chapter 21 claim, Defendant argues that

---

[8] Plaintiff filed other grievances and charges of "bullying" while she was employed by HISD. Although some of the forms cite legal principles involving "federal anti-discrimination laws," they do not allege factually that any of the alleged bullying or harassment was the result of race discrimination.

the claim is "judicially foreclosed," citing *Univ. of Texas at Austin v. Kearney*, 2016 WL 2659993 (Tex. App. -- Austin 2016, rev. denied). In *Kearney*, the Texas Court of Appeals noted that the plaintiff had affirmatively asserted a disparate treatment claim in addition to the retaliation claim, thereby negating the causation element of the *prima facie* case. *See Kearney*, 2016 WL 2659993 at *4. The Texas court stated that *even if* the plaintiff "had asserted her retaliation claim in the alternative," there were other reasons the claim failed. *See id.* In the case at bar, the Court construes Plaintiff's retaliation and race discrimination claims as pled in the alternative. Therefore, the existence of the race discrimination claims does not negate the causal connection element of the *prima facie* case for Plaintiff's Chapter 21 retaliation claim. Nonetheless, as explained below and as was true in *Kearney*, Plaintiff's retaliation claim fails for other reasons.

Defendant argues also that Plaintiff has failed to present evidence of a causal connection between her protected activity and her discharge. Defendant notes that Plaintiff testified in her deposition that she did "not currently" have evidence that Bidulescu's recommendation to terminate Plaintiff's employment was because Plaintiff had complained about race discrimination. *See* Motion, p. 24 (quoting Plaintiff's Deposition, Exh. 2 to Motion, pp. 124-25).

In her Response to Defendant's Motion, Plaintiff states that the causal connection is "exemplified when [she] filed a discrimination complaints/charges and then was discharged." Response, pp. 13-14. The Court construes this as an assertion of temporal proximity to satisfy the causal connection element. For purposes of a retaliation claim, "temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the *prima facie* stage." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 564 (5th Cir. 2019) (quoting *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015)). Where "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is the basis for the causal connection element of a *prima facie* case, the temporal proximity must be "very close." *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

As noted above, Plaintiff engaged in protected activity on April 7, 2016 and on June 11, 2016. Plaintiff's employment was terminated on September 27, 2016, approximately three and a half months later. The Court finds that this temporal proximity is sufficient for purposes of the *prima facie* case analysis. *See, e.g., Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 368 (5th Cir. 2013) ("roughly three months" sufficient for *prima facie* case); *Stroud v. BMC Software, Inc.*, 2008 WL 2325639, *5 (5th Cir. June 6, 2008) ("up to four months"

sufficient for *prima facie* case, citing *Garrett v. Constar, Inc.*, 1999 WL 354239, \*5 (N.D. Tex. May 25, 1999)); *cf. Clark*, 532 U.S. at 273-74 (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("three-month period, standing alone, is insufficient to establish causation"); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient)).

Defendant argued in its Objection that the temporal proximity must be measured from the first protected activity on April 7, 2016.[9]  In support of its argument, Defendant cited *Harville v. City of Houston, Miss.*, 935 F.3d 404, 414 (5th Cir. 2019), in which the Fifth Circuit stated that "the temporal clock does not 'restart' with each protected activity."  Following panel rehearing, however, the opinion relied on by Defendant was withdrawn and superseded.  *See Harville v. City of Houston, Miss.*, ___ F.3d ___, 2019 WL 6906099 (5th Cir. Dec. 19, 2019).  The Fifth Circuit's new opinion does not contain the language regarding the temporal clock or temporal proximity being measured only from the first protected activity.  Therefore, the temporal proximity of less than four months in this case is sufficiently close to satisfy the causal connection requirement for the *prima facie* case.

---

[9] The Fifth Circuit has held that a five-month period between the protected activity and the adverse employment action is insufficient temporal proximity to establish the causal connection element of the *prima facie* case of retaliation.  *See, e.g., Ganheart v. Brown*, 740 F. App'x 386, 391 (5th Cir. June 29, 2018).

### C.    **Defendant's Articulation of a Non-Retaliatory Reason for Decision**

Where, as here, the plaintiff has established a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its adverse employment decision. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). Where the *prima facie* case relies on temporal proximity, the defendant's articulated reason must explain "both the adverse action and the timing." *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). In either event, the defendant must "produce, rather than prove" the articulated reason. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004); *Chapple v. Tex. Health and Human Servs. Comm'n*, __ F. App'x __, 2019 WL 6210878, *2 (5th Cir. Nov. 20, 2019).

In this case, HISD has repeatedly articulated that it terminated Plaintiff's employment because of poor job performance. *See, e.g.*, Motion, pp. 9-10, 17; Reply, p. 3. "Job performance is a legitimate, non-retaliatory reason for termination." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (citations omitted).

Plaintiff in the summary judgment briefing did not challenge the adequacy of this articulated reason. Instead, she argued only that it was false and pretextual.

Although *Shackelford* requires the defendant's articulated reason to explain both the decision and its timing, *Shackelford* does not require separate explanations,

one for the adverse action and another for the timing. Indeed, the explanation articulated by the employer in *Shackelford*, accepted by the Fifth Circuit as a legitimate justification for the timing of the plaintiff's termination, was the plaintiff's poor job performance and inability to get along with fellow employees. *See Shackelford*, 190 F.3d at 408; *see also Wallace v. Seton Family of Hospitals*, 777 F. App'x 83, 92 (5th Cir. June 13, 2019) (adequate explanation that employee was "terminated because she had attendance issues and conflicts with co-workers while she was in her introductory period of employment"). Here, two separate supervisors documented Plaintiff's poor job performance. In August 2016, she was issued a PPA that was scheduled to last until September 2, 2016. During PPA "check-in" meetings on August 19, 2016, and September 2, 2016, Plaintiff was advised of areas in which she was not making progress toward meeting the PPA goals. Finally, seeing no improvement, on September 27, 2016, Bidulescu recommended Plaintiff's termination for unsatisfactory job performance.

Defendant has explained that it terminated Plaintiff's employment for poor job performance. This articulated reason, together with the evidence regarding attempts to assist Plaintiff through the PPA that expired in early September 2016, adequately explains both the termination decision and its timing.

### D.    Pretext

"Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to 'demonstrate that the employer's [stated] reason is actually a pretext for retaliation.'" *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (quoting *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).  "In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that the adverse [employment] action would not have occurred 'but for' the employee's decision to engage in an activity protected by Title VII." *Id.* (internal quotation and citation omitted).

The temporal proximity on which Plaintiff established her *prima facie* case, alone, is "insufficient to survive summary judgment at the pretext stage in the absence of other significant evidence of pretext." *Musser*, 944 F.3d at 564 (internal quotations and citations omitted); *Wallace*, 777 F. App'x at 92.

In addition to the temporal proximity between her protected activity and the termination of her employment, Plaintiff disagrees that her job performance was poor. *See* Reply to Reply [Doc. # 35], p. 2.  Merely disputing the employer's evaluation of her work "will not necessarily support an inference of pretext." *Shackelford*, 190 F.3d

at 408. Instead, the issue is whether the employer's perception of the plaintiff's job performance, "accurate or not, was the real reason for her termination." *Id.* at 408-09. As noted by the Magistrate Judge in the section of the R&R relating to pretext in connection with the race discrimination claims, a section to which no timely objections were filed and which this Court has adopted, Plaintiff has failed to present evidence to raise a genuine issue of material fact to support her conclusory belief that her job performance was good. *See* R&R, pp. 16-17. It is clear that Plaintiff disagrees with the evaluations of Bidulescu (and presumably Amponsah-Gilder) that her job performance was poor. Plaintiff has failed to present evidence, however, that those evaluations were not a reason her employment with HISD was terminated. Therefore, Plaintiff has failed to raise a genuine issue of material fact on the pretext issue. More importantly, Plaintiff has failed to present evidence that "but for" her protected activity, her employment at HISD would not have been terminated. Defendant is entitled to summary judgment on the retaliation claims.

## VI. <u>CONCLUSION AND ORDER</u>

The parties agree, for purposes of this Motion for Summary Judgment, that Plaintiff can establish a *prima facie* case of race discrimination. The Court finds that Plaintiff has presented evidence that establishes a *prima facie* case of retaliation.

HISD has adequately articulated a legitimate, non-discriminatory and non-retaliatory reason for its decision (and its timing) to terminate Plaintiff's employment, and Plaintiff has failed to present evidence that HISD's articulated reason is a pretext for discrimination or retaliation. Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 27] is **GRANTED**. It is further

**ORDERED** that Defendant's Motion to Strike Plaintiff's Untimely Objections [Doc. # 49] is **GRANTED** as to Plaintiff's untimely objections, and **DENIED** as to Plaintiff's response to Defendant's objections contained in the same document.

The Court will issue as separate final judgment.

SIGNED at Houston, Texas, this **6th** day of **January, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE